UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                          :
WELLNESS PUBLISHING, et al.,              :
                                          :
                                          :
    Plaintiffs,                           :        Civil Action No. 02-3773 (JAP)
                                          :
            v.                            :        **OPINION**
                                          :
ROBERT R. BAREFOOT, et al.,               :
                                          :
                                          :
    Defendants.                           :
_____:

Presently before the Court is a motion by defendants Direct Marketing Concepts, Inc.

("DMC"), ITV Direct, Inc. ("ITV"), Kevin Trudeau ("Trudeau") and Shop-America (USA)

L.L.C. ("Shop America") (collectively, "Defendants") to dismiss the Second Amended

Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6)[1] and 9(b).

Also before the Court is a motion by plaintiffs Wellness Publishing ("Wellness"), Holt, M.D.

Consulting, Inc. ("Holt Consulting"), Nature's Benefit, Inc., and Stephen Holt, M.D. ("Holt,"

collectively with the other plaintiffs "Plaintiffs") to compel mediation pursuant to Federal Rule

of Civil Procedure 16 and Local Rule 301.1.  For the reasons set forth below, Plaintiffs' motion

to compel mediation is denied, and Defendants' motion to dismiss is granted.

_____

[1]Where applicable, alternatively to Rule 12(b)(6), Defendants move under Rule 12(c).

## I.  Background

### A.  Factual Background[2]

Plaintiff Holt is a medical doctor and, according to Plaintiffs, is an internationally known authority on dietary nutritional supplements.  SAC at ¶ 1, 16.  He is an author of academic and clinical research articles, a medical researcher, and a college professor.  *Id.*  He has higher training in clinical pharmacology, nutrition, and therapeutics. *Id.*

Plaintiffs Holt Consulting and Nature's Benefit, Inc. are New Jersey corporations, and plaintiff Wellness Publishing is a wholly-owned subsidiary of Holt Consulting.  *Id.* at ¶¶ 1, 13. All of the Plaintiffs do business in the nutritional supplement industry and health care publishing industry.  *Id.* at ¶ 2.

This dispute involves allegations of copyright infringement, fraud, unfair competition, false advertising, conversion and interference with contractual relations.  All of the claims center on the advertising and sale of coral calcium supplements and related promotional materials.  The present dispute had its genesis in early 2000, when at a scientific advisory meeting, former defendant Robert R. Barefoot[3] solicited plaintiff Holt to formulate a nutritional supplement product through a joint venture between the two.  *Id.* at ¶ 18.  Barefoot  made a  number of

---

[2]In addressing Defendants' motion to dismiss, the Court must accept as true the allegations contained in the SAC.  *See Toys "R" US, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1301 (3d Cir. 1996).  Accordingly, the facts recited herein are taken from the SAC unless otherwise indicated and do not represent this Court's factual findings.

[3]Plaintiffs and Barefoot reached a settlement in 2004, thereby resolving Plaintiffs' claims as to Barefoot and Deonna Enterprises.  *See* Third Circuit Order dated August 30, 2004 (Docket Entry No. 71).  As such, Barefoot is not named as a defendant in the Second Amended Complaint.

proposals regarding the formulation of specific products.  Holt advised Barefoot that a number of these proposals were medically unsafe for formulation, using excessive doses of vitamin D and toxic metals, such as cesium, in dietary supplements.  *Id.* at ¶ 19.

In a letter dated March 3, 2000, Barefoot told Holt that he wanted to work with him in marketing a coral calcium dietary supplement.  Holt, however, became concerned that Barefoot would not act ethically in marketing a coral calcium supplement.  Barefoot assured Holt that he intended to practice good ethics and would abide by all of Holt's admonitions.  *Id.* at ¶ 21.

On or about April 18, 2000, Holt and Barefoot entered into a "general letter of agreement" that Barefoot would use his "best efforts to show" a product manufactured by Holt Consulting.  *Id.* at ¶ 22.  The product was to be known as "Barefoot's Coral Calcium Plus."  In May 2001, Wellness, the wholly-owned entity of Holt Consulting, entered into a contract with Barefoot and former defendant Deonna Enterprises ("Deonna"),  a company that Barefoot owned and/or operated.  *Id.* at ¶ 25.  Essentially, that contract granted Wellness exclusive rights in the book *Barefoot on Coral Calcium* (referred to at times herein as the "Work"), which Plaintiffs described as "a non-fiction work about the uses for Coral Calcium."  *Id.*  The agreement also contained a non-compete clause that provided that Barefoot would not compete with Plaintiffs on the subject of coral calcium.  *Id.* at ¶ 26.

 Despite Barefoot's contractual commitment, however, Barefoot solicited and obtained more lucrative offers involving products that competed with Coral Calcium Plus.  Barefoot allegedly sabotaged the sales of Coral Calcium Plus and converted customers to competing products.  *Id.* at ¶ 22.

Holt, nevertheless, made efforts to proceed with the joint venture.  Holt continued to

stress to Barefoot that claims regarding the coral calcium product must be true and ethical.  *Id.* at ¶ 23.  Barefoot, however, expressed his dissatisfaction at times when Holt would not permit certain claims to be made about the product.  *Id.*  Further, Barefoot's website contained representations regarding coral calcium that Holt felt were unlawful. *Id.* at ¶ 28.

According to the SAC, beginning in early 2002, "it became apparent that Barefoot had been acting in bad faith *ab initio*." *Id.* at ¶ 29.  The SAC contains a list of allegedly "tortious acts" committed by Barefoot, which include the following:

- Instead of promoting the Work pursuant to the contract with Wellness, Barefoot promoted a competing "literary work" and associated items in at least two infomercials.  One infomercial was created and marketed by Barefoot and defendants Trudeau, DMC, and former defendants Triad Marketing, Inc. and King Media, Inc.  The other infomercial was created and marketed by Barefoot and defendants Trudeau and Shop-America.  The SAC alleges that the Defendants were "made aware of" the contract between Plaintiffs on the one hand and Barefoot and Deonna Enterprises on the other.

- Barefoot misappropriated certain content from the Work into another book.

- Barefoot undertook to compete with Plaintiffs in the sale of coral calcium products.

- Barefoot also violated agreements with other manufacturers and distributors who he lead to believe would be exclusively associated with him.

- Holt "had to resist" Barefoot's "insistence" on manufacturing coral calcium products that would have been dangerous, and Holt was required to insist that

4

Barefoot desist from making inaccurate or illegal statements on the use of coral calcium to treat disease.

While it is clear from the summary above that most of the factual allegations in the SAC center on the actions of Barefoot, who is no longer a defendant in the case, the allegations are nevertheless relevant to this motion in that Plaintiffs allege that the moving Defendants engaged in wrongful acts, detailed further below, which relate to Barefoot's actions.  However, it is notable that the specific factual allegations set forth in the SAC regarding the moving Defendants are extremely limited.  As noted above, the SAC states that Defendants "created and marketed" two infomercials with Barefoot in which Barefoot "promoted competitive literary work and competitive associated items for sale."  SAC ¶ 29.A.  One infomercial was "created and marketed" by Barefoot with defendants Trudeau and DMC along with others not relevant to this motion.  The second was "created and marketed" by Barefoot with Trudeau and Shop America. *Id.*  ITV was also involved in the production of one or more of these infomercials.  *Id.* at Count Nine, ¶ 2.

The SAC also alleges that certain content from the Work was misappropriated by Barefoot into a new edition of his book *The Calcium Factor*.  Plaintiffs note in the SAC, however, that Barefoot claimed that such misappropriation was done by DMC and others not relevant to this motion.  SAC ¶ 29.B.  The remaining allegations against the moving Defendants are set out in Counts One through Twelve of the SAC, as detailed below.

B.  Causes of Action Pled in the Second Amended Complaint

The SAC contains twelve counts.  As noted above, virtually all of the facts recited in the SAC center on the actions of Barefoot.  Because, however, Barefoot has reached a settlement

5

with Plaintiffs, none of the counts in the SAC are directed at Barefoot.  The first count is asserted against defendants Trudeau, DMC and Shop America, as well as others not relevant to this motion.  Count One alleges that each of these defendants, individually and in concert with others and/or with Barefoot and Deonna, have "misappropriated, converted, published and/or sold Works of which plaintiffs hold the copyright, in violation of 17 U.S.C. §501."  SAC at Count One.

Count Two asserts that all Defendants made false and misleading statements with regard to Barefoot's coral calcium product, as well as with regard to their rights to sell coral calcium associated with the Barefoot name and the Work.  Plaintiffs allege that such conduct violates 15 U.S.C § 1125(a), which prohibits false advertising.

In Count Three, Plaintiffs allege that Defendants deceived the public with unauthorized claims regarding coral calcium products and literary works associated with the Barefoot name.

Count Four alleges that defendants DMC, Trudeau and Shop America tortiously interfered with the contract between Plaintiffs and Barefoot/Deonna.

In Count Five, Plaintiffs allege that Shop America and Trudeau promoted the Work in an infomercial with Barefoot and Deonna, and defendants made inaccurate and unauthorized claims regarding the coral calcium products.  It is also alleged that DMC joined with Trudeau and Barefoot to promote coral calcium in another infomercial, which similarly made false claims about coral calcium.  The SAC alleges that Defendants' claims were meant to mislead, constitute fraud, unfair competition and violate various statutory and regulatory provisions.

Count Six asserts that Defendants tortiously interfered with the contract between Plaintiffs and Barefoot/Deonna by utilizing Barefoot's likeness in infomercials on coral calcium

in order to sell items such as coral calcium supplements.

Count Seven alleges that Defendants converted Plaintiffs' property.

In Count Eight, Plaintiffs allege that ITV misappropriated Plaintiffs' copyright.  The SAC asserts that ITV was involved in the production and airing of one of the previously mentioned infomercials "and/or [was] involved in the sale of calcium nutritive supplements and books which  misappropriated Plaintiff's copyright."  SAC, Count Eight, ¶ 2.

According to Count Nine, in the course of these activities, ITV made claims designed to deceive the public.  Based on this, Count Nine alleges that ITV engaged in common law unfair competition.

Count Ten alleges that ITV tortiously interfered with Plaintiffs' contractual relations by utilizing Barefoot's likeness on infomericals in order to sell items such as coral calcium supplements.

In Count Eleven, Plaintiffs assert that defendants Trudeau, Shop America and ITV conspired to tortiously interfere with the contract between Plaintiffs and Barefoot/Deonna.

Count Twelve alleges that Trudeau, Shop America and ITV conspired "to unfairly compete through false advertising."  Count Twelve at ¶ 2.  Specifically, Plaintiffs claim these defendants conspired "to falsely advertise the benefits of coral calcium in two infomercials which had the effect of ultimately damaging the market for the Plaintiff's coral calcium product."  *Id.* at ¶ 3.

C.  Procedural History[4]

The original complaint in this matter was filed on August 5, 2002.  Plaintiffs filed an

Amended Complaint on October 9, 2002.  In response, Defendants filed a motion to dismiss.

The Court granted Defendants' motion and dismissed the matter, finding there to be a lack of

personal jurisdiction.  The Third Circuit reversed and remanded the case for further proceedings.

Subsequently, on July 3, 2006, Plaintiff filed a motion seeking leave to file a second

amended complaint to add ITV as a defendant, cure certain technical deficiencies in the

complaint and refine existing causes of action.  This motion was granted by the Magistrate Judge,

and Plaintiffs filed their Second Amended Complaint on October 6, 2006.  This motion followed.

## II.  Analysis

### 1.  Plaintiffs' Motion to Compel Mediation

While Plaintiffs' appeal of this Court's earlier order was pending in the Court of Appeals,

the parties participated in the Third Circuit's mediation program in an attempt to reach a

resolution of their dispute.  This mediation was unsuccessful.  Subsequently, on or about April 3,

2006, by order of the Magistrate Judge, the parties again participated in settlement discussion

before a mediator.  Neither of these mediation attempts were successful.

Plaintiffs are now seeking an order from this Court compelling all parties to again submit

to mediation in an attempt to resolve this dispute.  According to Plaintiffs, defendant Trudeau

was not present at the 2006 mediation, which allegedly hindered the ability of the parties to

settle.  Plaintiffs now ask the Court to grant their motion and order all parties to personally

---

[4]The procedural history set forth here is a summary of the history relevant to this motion.
It relates only to the moving defendants and does not include the history of this case as it may
relate to defendants no longer parties to this case.

appear at a third mediation session.

Defendants oppose Plaintiffs' motion. First, Defendants explain that representatives of Trudeau with full settlement authority were present at the 2006 mediation and, therefore, attempts at mediation were not hampered by a lack of participation. Further, Defendants argue that nothing that would bear on the issue of settlement has changed since the last mediation attempt, and, therefore, there is no reason to believe any further attempts at mediation would have a different outcome. Indeed, Plaintiffs have not articulated any rationale as to why a third attempt at mediation would be any more productive than the two previous sessions. As such, the Court finds there to be no reason to compel further mediation. Plaintiffs' motion, therefore, is denied.

## 2.  Motion to Dismiss the SAC

### A.  Procedural Issues

Plaintiffs first argue that Defendants' motion, to the extent it is brought under Rule 12(b)(6), is procedurally improper and must be denied. Defendants have moved to dismiss various claims in the SAC under Rule 12(b)(6) for failure to state a claim or, in the alternative, for judgment on the pleadings under Rule 12(c). "A Rule 12(b) motion to dismiss a complaint must be filed before any responsive pleading. A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed." *Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Here, Plaintiffs assert that because Defendants filed answers to Plaintiffs' earlier complaints, Defendants' motion under Rule 12(b)(6) has not been timely filed "before any responsive pleading." Plaintiffs further claim that Defendants cannot move under Rule 12(c) because they have not filed answers to the SAC, and, therefore, the pleadings

9

are not closed.

In effect, Plaintiffs are arguing that the pleadings are closed on the one hand, but the pleadings are not closed on the other.  It simply does not make sense for Plaintiffs to be permitted to have it both ways.  Indeed, if Plaintiffs' argument is correct, Defendants would be in a procedural "catch-22," where a party who filed an answer to a previous complaint could not file a motion seeking to dismiss a newly amended complaint until that party first files an answer to the new complaint (at which time a motion to dismiss for failure to state a claim would be proper as a motion for judgment on the pleadings under Rule 12(c), *see Turbe v. Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)).  Plaintiff has not cited a case in which any court has denied a motion by applying the rules in such a manner, and this Court can see no reason for such a result.  Indeed, were the Court to dismiss Defendants' motion as procedurally barred, Defendants would simply file an answer and then re-file their motion.  This is hardly an efficient way to proceed.

Moreover, contrary to Plaintiffs' assertions, the SAC does not merely "cure[] technical deficiencies in the Amended Complaint." Pl. Brf. at 3.  First, the SAC adds ITV as a defendant for the first time.  As such, ITV has not filed any responsive pleading in this case.  Second, the SAC added several additional Counts.  No responsive pleading has been filed by Defendants in response to those Counts.  Third, the Second Amended Complaint adds Defendant Trudeau to the tortious interference claim, a claim not previously directed to him.  As Defendants have not had the opportunity to file a responsive pleading with respect to each of these instances, the Court finds that a motion under 12(b)(6) is appropriate here.  However, to the extent it can be said that a 12(b)(6) motion is not appropriate because Defendants have previously filed an answer to a particular claim, the Court would find the motion proper as to those claims under

Rule 12(c).   *See Kalin v. Xanboo, Inc.*, 2007 U.S. Dist. LEXIS 3342 at *9-12 (S.D.N.Y. 2007).

Regardless of whether the relevant parts of the instant motion proceed under Rule 12(b)(6) or

12(c), the Court would use identical guidelines in addressing the motion.

### B.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if

the complaint fails to state a claim upon which relief can be granted. Recently, the Supreme

Court refashioned the standard for addressing a motion to dismiss under Rule 12(b)(6).  *See Bell*

*Atl. Corp. v. Twombly*, --- U.S. ----, ----, 127 S. Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).  The

*Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of

his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do[.]"  *Id.* at 1964-65 (internal citations omitted); *see*

*also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.2007) (stating that standard of review for

motion to dismiss does not require courts to accept as true "unsupported conclusions and

unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal

quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations must be enough to raise a

right to relief above the speculative level, ... on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)...." *Twombly*, 127 S.Ct. at 1965 (internal citations

and footnote omitted).

To the extent Defendants' motion is to be considered under Rule 12(c), the Court notes

that a motion to dismiss for failure to state a claim under Rule 12(c) is identical to one filed

under Rule 12(b)(6), except that Rule 12(c) allows for the motion to be filed after the filing of an

answer, while Rule 12(b)(6) allows for the motion to be made in lieu of an answer. As such, in

either instance, the Court is to use the same standard in evaluating the motions. *Reinbold v. U.S.*

*Post Office,* 2007 WL 2949149 at *1 n.1 (3d Cir. Oct. 11, 2007) (citing *Turbe v. Virgin Islands*,

938 F.2d 427, 428 (3d Cir. 1991)).

Under Federal Rule of Civil Procedure 12(b)(1) a party may move for dismissal of a case

based on lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the

burden of proving that subject matter jurisdiction properly exists in the federal court. *Mortensen*

*v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When considering a motion

to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "no presumptive

truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will

not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Moreover, "[w]hen a motion to dismiss is based on a lack of subject matter jurisdiction pursuant

to Rule 12(b)(1), as well as other Rule 12(b) defenses, the Court should consider the Rule

12(b)(1) challenge first because, if it must dismiss the complaint for lack of subject matter

jurisdiction, the accompanying defenses become moot and need not be addressed." *Pashun v.*

*Modero*, 1993 WL 185323, *2 (D.N.J. May 26, 1993).

C.  Copyright Infringement Claims

In Counts One and Eight, Plaintiffs allege that Defendants have misappropriated "Works

of which plaintiffs hold the copyright, in violation of 17 U.S.C. § 501." SAC, Count One, ¶ 2.

Defendants argue that these counts must be dismissed under Rule 12(b)(1) because (1) Plaintiffs

lack standing because they no longer hold the copyright to *Barefoot on Coral Calcium*; and (2)

the Court lacks jurisdiction over Plaintiffs' copyright infringement claims because Plaintiffs failed to allege that any such copyright was registered.

### 1.  Standing to Bring Copyright Claim

Pursuant to a Mutual Release and Settlement Agreement (the "Settlement Agreement"), executed on or about March 13, 2004, between Barefoot, Deonna Enterprises and Karbo Enterprises on one hand, and Holt and "all of his corporations and affiliates," including Plaintiffs Nature's Benefit Inc., Wellness and Holt Consulting, on the other, Plaintiffs transferred any and all of their copyright interests in the Work back to Barefoot.  *See* Settlement Agreement attached as Exhibit B to the Declaration of Christopher F. Robertson.[5]  Defendants argue that as a result of this transfer, Plaintiffs no longer have standing to sue for the alleged infringing acts.  Defendants appear to be basing their argument on the plain language of the Copyright Act, 17 U.S.C. §501(b), which provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . .to institute an action for any infringement of that particular right committed while he or she is the owner of it."  According to Defendants, Plaintiffs lack standing because they are no longer a "legal or beneficial owner" of a right under a copyright.[6]

Defendants further argue that Plaintiffs' claims cannot be saved by a provision in the Settlement Agreement through which Wellness purports to retain its rights in the accrued legal

---

[5]The Court is not confined to the allegations in the complaint to resolve issues bearing on jurisdiction.  *See, e.g., Gotha v. U.S.*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir. 1977) ("[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").

[6]Interestingly, where Defendants quote § 501(b) in their brief, they omit the phrase "committed while he or she is the owner of it."

13

claims against the Defendants.  Under the Settlement Agreement, Wellness conveyed to Barefoot

"the rights to the [Work]," and Wellness and Barefoot expressly "retain[ed] their rights in legal

actions against DMC, Shop America, . . .Kevin Trudeau and other parties concerning the sales of

books and coral calcium."  Settlement Agreement at ¶ 1.  In support of their argument,

Defendants rely on *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005), in

which the court addressed the issue of whether an assignee of an accrued claim of copyright

infringement who had no legal or beneficial interest in the copyright itself could institute an

action for copyright infringement.

In *Silvers*, the assignee was a scriptwriter who wrote a script for a television movie.  At

no point did the assignee ever hold the copyright for the work because the script was a work-for-

hire.  The owner of the copyright, however, assigned to the scriptwriter "all right, title and

interest in and to any claims and causes of action" against certain entities that had produced a

movie screenplay that allegedly infringed upon the copyright of the television script.  The Ninth

Circuit held that the "bare assignment of an accrued cause of action" did not vest in the assignee

the ability bring an action for infringement because, according to statute, only the owner of an

exclusive right under a copyright may sue for infringement.  402 F.3d at 889-90.

The Court finds that Defendants' argument is flawed and their reliance on *Silvers* is

misplaced.  Contrary to Defendants' argument, it appears to be well established that a copyright

holder can assign its copyright interests but nevertheless retain the right to bring legal actions that

accrued during the assignor's ownership of the copyright.  In fact, an assignor need not expressly

reserve its right in a legal action that accrued during its ownership as Wellness did.  An assignor

retains such a right unless it is expressly assigned to the assignee along with the copyright.  As

14

explained by the Second Circuit:

> The legal or beneficial owner of an exclusive right under a copyright is entitled to bring actions for infringements of that right occurring during the period of its ownership.  Thus, a copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them.  Rather, the assignee is only entitled to bring actions for infringements that were committed while it was the copyright owner and *the assignor retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to the assignment*.

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,  944 F.2d 971, 980 (2d Cir. 1991) (citations

omitted).  *See also Parfums Givenchy Inc. v. C & C. Beauty Sales, Inc.*, 832 F. Supp. 1378, 1384

(C.D. Ca. 1993) ("[A]n assignment of a copyright ordinarily is presumed not to convey the right

to sue for prior causes of action."); 2 Patry on Copyright § 5:113 (2007) ("The general rule is that

a transfer does not convey preexisting causes of action unless expressly conveyed in the transfer

document.  Thus, absent an express transfer, the transferor retains the right to sue for infringement

of any rights it owned at the time the infringement occurred.").

  Consequently, in order to have standing to bring an action for infringement, the owner of

an exclusive right under a copyright need only have that status at the time of the alleged

infringement.  According to the SAC, Plaintiffs obtain exclusive rights in the Work in May 2001,

and conveyed these rights to Barefoot in March 2004.  There is no indication in the SAC and no

assertion by Defendants that any of the allegedly infringing acts occurred outside of the time that

Plaintiffs held exclusive rights under the Work's copyright.  Therefore, the right to bring an

action with respect to such allegedly infringing acts accrued to Plaintiffs.  The Settlement

Agreement is clear that Plaintiffs did not intend to divest themselves of such rights when they

conveyed their interests in the copyright to Barefoot.  Consequently, the Settlement Agreement

did not alter Plaintiffs' standing to bring its infringement claims in this case.

### 2.  Failure to Allege Copyright Registration

Under the Copyright Act, "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).[7]  The terms of the statute are clear and unambiguous, and its requirements are jurisdictional.  *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1200 (10th Cir. 2005) (referring to § 411(a) as "jurisdictional lynchpin to copyright infringement actions"); *Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 365 (5th Cir. 2004) (stating that § 411(a) is a "jurisdictional prerequisite" in addition to 28 U.S.C. §§ 1331, 1338 ); *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 114, 115 (2d Cir. 2003) (affirming dismissal based upon lack of "subject matter jurisdiction" because the "registration requirement [of § 411(a)] is jurisdictional"); *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 283 (4th Cir. 2003) ("Copyright registration is a jurisdictional prerequisite to bringing an action for infringement under the Copyright Act."); *Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 630 n.1 (6th Cir. 2001) (noting that "[t]he registration requirement under section 411[a] is a jurisdictional prerequisite to the right of the holder to enforce the copyright in federal court"); *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1285 (11th Cir. 2000) (noting that registration requirement a jurisdictional prerequisite to infringement suit); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1163 (1st Cir. 1994) (describing section 411(a)'s registration requirement as a "jurisdictional requirement").  Thus, "[t]he failure to obtain an actual

---

[7]The limited exceptions to this rule are not applicable in this case.

registration or a refusal to register deprives the court of subject-matter jurisdiction." 5 Patry on Copyright § 17:77.

The SAC is completely devoid of any allegation that registration has been obtained for any "Works of which plaintiffs hold the copyright." SAC, Count One, ¶ 2. Further, Plaintiffs have admitted that the Work *Barefoot on Coral Calcium*, which appears to be the only work at issue in this litigation, was not registered with the Copyright Office at the time this action was filed. It is clear, therefore, that the Court did not have subject matter jurisdiction over Plaintiffs' copyright infringement claims at the outset of this litigation.

In response to Defendants' motion, Plaintiffs have provided documentation showing that the Work *Barefoot on Coral Calcium* was registered on December 20, 2002, four months after the initial complaint was filed and two months after the first amended complaint was filed. However, although the SAC was filed and three and a half years after Plaintiffs registered the Work, the fact of the registration is not alleged in the SAC. Plaintiffs have acknowledged that "it was incumbent upon [them]" to plead in the SAC the appropriate facts regarding registration and that they failed to do so. *Id.* In their motion papers, Plaintiffs have asked the Court to grant them leave to file a Third Amended Complaint to correct this deficiency. Defendants argue that such an amendment would be futile because the statute of limitations on the infringement claims has run and the "relation back" doctrine embodied in Federal Rule of Civil Procedure 15 cannot save Plaintiffs' claim since the Court did not have subject matter jurisdiction over those claims when the action was filed.

Defendants are correct in their argument that the Court did not have subject matter jurisdiction over Plaintiffs' copyright claims when both the complaint and first amended

17

complaint were filed because the Work had not been registered at the time of the filings.  The Court would have had jurisdiction over claims for infringement of the Work after the Work was registered had such claims been properly brought subsequent to the registration.  The question for the Court now is whether Plaintiffs may confer subject matter jurisdiction on the Court after the statute of limitations has run on their infringement claims by amending their complaint to reflect events that occurred subsequent to the commencement of the action.

There have been several courts that have held that a plaintiff who files a copyright infringement suit prior to seeking registration from the Copyright Office may nevertheless cure the jurisdictional defect by subsequently amending or supplementing its complaint once it has registered the copyright.  *See, e.g., M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488-89 (11th Cir. 1990) (proper course would have been for plaintiff to file a new complaint once registration was complete after dismissal for lack of jurisdiction rather than amend earlier complaint, but distinction between filing a new complaint and filing an amended complaint was merely technical and did not prevent circuit court from reaching merits of appeal); *Simplexgrinnell, L.P. v. Ghiran*, 2007 WL 2480352, *2 (M.D. Fla. Aug 29, 2007) (failure to allege whether application for registration was granted or denied can be cured by amendment); *Identity Arts v. Best Buy Enterprise Services Inc.*,  2007 WL 1149155 (N.D. Cal. April 18, 2007) (second amended complaint alleging registration cured jurisdictional defect); *J. Racenstein & Co. v. Wallace*, 1997 WL 605107, *1-2 (S.D.N.Y. Oct. 1, 1997) (denying motion to dismiss conditioned upon plaintiff filing amended complaint reflecting copyright registration); *Haan Crafts Corp. v. Craft Masters, Inc.*, 683 F. Supp. 1234, 1242 (N.D. Ind. 1988) (adopting rule that infringement suit may proceed even when registration is made after filing of the complaint, as

long as plaintiff amends its complaint after registering to allege registration); *Frankel v. Stein and Day, Inc.*, 470 F. Supp. 209, 212 n.2 (S.D.N.Y. 1979) (granting plaintiff leave to amend complaint where plaintiff, upon learning of jurisdictional defect, immediately complied with registration requirements).

It appears, however, that the instant case differs from the above cases in one significant respect, namely, that the statute of limitations on Plaintiffs' infringement claims had run prior to Plaintiffs seeking leave to correct the deficiency in their pleading.  Defendants argue that this fact makes Plaintiffs' proposed amendment futile.  Defendants cite *Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 113, 121 (3d Cir. 1999) (court lacked jurisdiction over original complaint because administrative agency decision being challenged was not final; later filed amended complaint was untimely and could not relate back to original complaint over which court had no jurisdiction); *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1285 (11th Cir. 2000) (finding that it was proper to disallow an amendment where registration of copyright was not effected until after statute of limitations expired); and *Reynolds v. United States*, 748 F.2d 291, 293 (5th Cir.1984) (holding that it was proper to dismiss an amended complaint that was filed "on a date on which the court lacked jurisdiction" and "related back to a date on which the court also lacked jurisdiction").  According to Defendants, these cases establish that an amendment to Plaintiffs' infringement claims cannot "relate back" to the original complaint because the Court did not have jurisdiction over those claims at the time the action was filed.  Said another way, Defendants claim that Plaintiffs cannot bring their infringement claims now because the statute of limitations has run, and any amended complaint cannot relate back to the initial complaint because the Court did not have jurisdiction over the claims when they were brought originally.

The Court finds that Defendants' argument has merit.  It appears that the proper course for a plaintiff who has filed a jurisdictionally deficient copyright infringement claim, upon satisfying the jurisdictional prerequisite of registration, is to file a new action. Many of the cases that allow for an amendment similar to the one sought here reason that, because a dismissal for lack of subject matter jurisdiction would simply result in the plaintiff filing a new complaint, the interests of efficiency warrant allowing the plaintiff to simply amend its old complaint rather than file a new action.  Such an interest is not present in this case as a result of the expiration of the limitations period.

Moreover, because the amended complaint Plaintiffs seek to file would be filed more than three years after the allegedly infringing acts occurred, it must "relate back" to the original complaint to be considered timely.  *Urrutia v. Harrisburg County Police Dept.*,  91 F.3d 451, 453 (3d Cir. 1996) ("An amendment to a complaint must satisfy the statute of limitations . . . [i]f the limitations period has expired, in order to survive, the amendment must relate back to the original complaint under Rule 15(c)").  However, an amendment cannot relate back to a complaint over which the Court did not have subject matter jurisdiction.  *Kreider Dairy Farms*, 190 F.3d at 121.  Here, the Court did not have subject matter jurisdiction over Plaintiffs' complaint when it was originally filed, as the Work at issue was not registered with the Copyright Office until several months after Plaintiffs first filed their complaint.

It is important to note that this is not a case where subject matter jurisdiction existed at the outset of the action but Plaintiffs simply failed to properly plead such jurisdiction.  To the contrary, when Plaintiffs initiated this action the Court was without subject matter jurisdiction to hear Plaintiffs' copyright claims.  As such,  28 U.S.C. § 1653, which provides that "[d]efective

20

allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," does not

apply to help Plaintiffs here.  Section 1653 "addresses only incorrect statements about

jurisdiction that actually exists, and not defects in the jurisdictional facts themselves."

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831, 109 S. Ct. 2218, 104 L. Ed.2d 893

(1989).  Consequently, Plaintiffs copyright claims are dismissed.

D. Lanham Act Claims

In Count Two of the SAC, Plaintiffs assert that Defendants violated the Lanham Act, § 43

(specifically, 15 U.S.C. § 1125(a)(1)(B)[8]), by making "false and misleading statements and

representations in commerce concerning the nature, composition, characteristics, quality,

effectiveness and uses of the coral calcium products associated with the Barefoot name in issue,

and/or making unauthorized, false and misleading statements in revised editions of [*Barefoot on

Coral Calcium*] and in other books, and other formats, such as video."  SAC at Count Two, ¶ 2.

Plaintiffs also allege that Defendants "made false and misleading statements and representations

_____

[8]Plaintiffs clarified in their briefing on this motion that their Lanham Act claim is brought
pursuant to § 1125(a)(1)(B).  The statute reads in the relevant part as follows:

(1) Any person who, on or in connection with any goods or services, or any
container for goods, uses in commerce any word, term, name, symbol, or device,
or any combination thereof, or any false designation of origin, false or misleading
description of fact, or false or misleading representation of fact, which--

* * *

(B) in commercial advertising or promotion, misrepresents the nature,
characteristics, qualities, or geographic origin of his or her or another person's
goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is
likely to be damaged by such act.

in commerce regarding their alleged rights to sell coral calcium with the Barefoot name."[9]  *Id.* at ¶ 3.  Defendants argue that Plaintiffs' Lanham Act claim fail for two reasons: (1) Plaintiffs lack standing to bring the claim because they have not and cannot allege the requisite "competitive injury" -- or, for that matter, any injury -- with respect to this claim; and (2) Plaintiffs have not plead the elements of their § 43 claim with the requisite particularity.  Def. Brf. at 10.

In support of their argument with respect to standing, Defendants cite *Telecom Intern. Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001); *Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 232 (3d Cir. 1998); *Stanfield v.Osborne Indus., Inc.*, 52 F.3d 867, 873 (10th Cir. 1995); and *L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993).  Of these, the Court finds that only *Conte Bros.* provides appropriate guidance on the issue.  *Stanfield*, *L.S. Heath*, and *Telecom* each applied a requirement that a plaintiff must be a direct competitor of a defendant in order to have standing to bring a false advertising claim under § 43(a).  *Conte Bros.,* which is controlling authority on this Court, expressly rejects this requirement of a direct competitive relationship and, in fact, specifically cites *Stanfield* and *L.S. Heath* as cases contrary to the approach the Third Circuit chose to follow. 165 F.3d at 232 n.6.  Under the approach taken by *Conte*, parties not in direct competition may have standing to sue if they meet a "reasonable interest" standard, the test for which is discussed further below.

---

[9]Although the issue was not raised by either party, it appears that this second allegation may not state a claim under § 43(a)(1)(B) because it not directed to "the nature, characteristics, qualities, or geographic origin" of the coral calcium product.  *See Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 652 (D. Del.2006) (dismissing § 43(a)(1)(B) claim because defendant's purported misrepresentations regarding its status as an authorized licensee under plaintiff's trademarks was not directed to the nature, characteristics, or qualities of the product at issue).

The doctrine of standing incorporates two elements, one constitutional and the other prudential. *Conte Bros.*, 165 F.3d at 225 (citing *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) ("The question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'")). Defendants do not specify which component of standing they challenge in their motion, but it would appear based upon the cases cited by Defendants that they challenge Plaintiffs' prudential standing. However, being that Defendants' argument implicates the issue constitutional standing as well, the Court shall address both elements of standing.

1. Constitutional Standing for Lanham Act Claim

To satisfy the threshold requirement of the constitutional standing, which is derived from the Article III "case" or "controversy" requirement, a plaintiff must show (1) an injury in fact, (2) that is fairly traceable to the actions of the defendant, and (3) that likely will be redressed by a favorable decision. *Bennett*, 520 U.S. at 162. To fulfil the first requirement, a plaintiff must demonstrate an "injury in fact" that is "concrete," "distinct and palpable," and "actual or imminent." *Interfaith Community Organization v. Honeywell Intern., Inc.*, 399 F.3d 248, 254 (3d Cir. 2005) (quoting *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 225, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003)). Such injury "must be an invasion of a concrete and particularized legally protected interest and may not be either conjectural or hypothetical too remote temporally." *Id.* That said, the Third Circuit has noted that the injury-in-fact requirement "is not Mount Everest." *Danvers Motor Co. v. Ford Motor Co.*, 431 F.3d 286, 294 (3d Cir. 2005). A plaintiff can meet this requirement by merely alleging "some specific, identifiable trifle of injury." *Id.* (quotations omitted).

23

In the present case, Defendants argue that Plaintiffs fail to allege any injury whatsoever as a result of the alleged Lanham Act violations complained of in Count Two.  Plaintiffs respond to Defendants' argument by merely laying out the elements of a Lanham Act claim, block-quoting the SAC for nearly three pages of their brief and concluding in a single sentence that they have adequately pled the requisite elements of their claim.

As the Complaint is not a model of artful drafting, the Court has had to stretch to the far reaches of the four corners of the SAC to find any allegations of damages at all, much less those that may specifically relate to a Lanham Act claim.  However, in Count Twelve of the SAC Plaintiffs allege that Defendants' engaged in false advertising in infomercials "which had the effect of ultimately damaging the market for the Plaintiff's coral calcium product."  SAC, Count Twelve, ¶ 3.  Generously construed, Plaintiffs appear to be alleging that Plaintiffs lost sales as a result of false claims made by Defendants in their infomercials.  As such, the SAC can be construed as alleging that Plaintiffs were damaged by Defendants' purported false statements described in Count Two.  Also, the SAC does include a request for compensatory damages.  SAC at 20.  Consequently, for the purposes of this motion to dismiss, the Court shall consider the SAC adequate to establish that Plaintiffs have met the threshold requirement of constitutional standing for the Lanham Act claim.

### 2.  Prudential Standing

Prudential standing "consists of a set of judge-made rules forming an integral part of judicial self-government."  *Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164, 179 (3d Cir. 2001) (quotations omitted).  Federal courts adopt prudential limits on standing "to avoid deciding questions of broad social import where no individual rights would be vindicated and to

limit access to the federal courts to those litigants best suited to assert a particular claim." *Conte Bros.*, 165 F.3d at 225 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)).

In *Conte Bros.*, the Third Circuit set forth the test to be used to address the prudential standing requirements of § 43(a).  Under this test, in analyzing whether a party has prudential standing under § 43(a), a court should consider the following factors:

> (1) The nature of the plaintiff's alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the [Lanham Act]?
>
> (2) The directness or indirectness of the asserted injury.
>
> (3) The proximity or remoteness of the party to the alleged injurious conduct.
>
> (4) The speculativeness of the damages claim.
>
> (5) The risk of duplicative damages or complexity in apportioning damages.

*Conte Bros.*, 165 F.3d. at 233.

As stated in the SAC, Plaintiffs are in the nutritional supplement business and health care publishing industry.  Defendant Kevin Trudeau is a "cable television personality" that has appeared in an infomercial "promoting coral calcium" and defendants DMC, Shop America and ITV, as best as can be discerned from the SAC, each at one time produced an informercial "promoting coral calcium."  SAC at ¶¶ 9-12.  It is unclear from the SAC whether Plaintiffs and Defendants are direct competitors, as there is no indication whether Defendants are in the business of selling coral calcium supplements or merely in the business of producing infomercials.  In any event, as noted above, the Third Circuit does not require a direct

25

competitive relationship to exist for a party to have standing to bring a § 43(a) claim.  However, in applying the above factors, the Third Circuit has noted that  "while there may be circumstances in which a non-competitor may have standing to sue . . ., the focus of the Lanham Act is on commercial interests [that] have been harmed by a competitor's false advertising and in secur[ing] to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not."  *Conte Bros.*, 165 F.3d at 234.

In *Conte Bros.*, the plaintiffs were retailers of the defendant's product.  The plaintiffs alleged that the defendant manufacturer had made false claims in the advertising of the manufacturer's own product, resulting in a loss of sales at the retail level.  The Third Circuit held that this type of harm was not the type Congress intended to redress through the Lanham Act because it did not "not impact the [retailers'] ability to compete; nor [did] it detract from the [retailers'] reputation or good will."  *Id.*  The present situations differs, however, from *Conte Bros.*, in that the false statements that are alleged to have been made by Defendants directly concern Plaintiffs' products and, therefore, could bear directly on Plaintiffs' ability to compete in the marketplace.  Consequently, considering the factors set forth above, to the extent that Plaintiffs have alleged damages resulting from false statements, the Court does not find Plaintiffs to lack prudential standing.

### 3.  Applicability of Rule 9(b)

Defendants argue that dismissal of Plaintiffs' Lanham Act claim is also warranted because Plaintiffs have failed to identify with the specificity required by Rule 9(b) any of the requisite elements of the claim.  To establish a Lanham Act claim based on a false or misleading

26

representation of a product, a plaintiff must show the following: "1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Warner-Lambert Co. v. Breathasure*, 201 F.3d 87, 91-92 (3d Cir. 2000) (alteration in original).

Plaintiff does not dispute that the pleading requirement of Rule 9(b) is applicable here but rather argues that the SAC meets this heightened standard.  However, whether the application of Rule 9(b) applies here is far from clear.  Authorities differ as to whether the heightened pleading standard applies to Lanham Act claims.  *Compare, e.g.*, *Conditional Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006) ("Claims that allege . . . false advertising under the Lanham Act are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).") with *John P. Villano, Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997) ("a claim of false advertising under [the Lanham Act] falls outside the ambit of Rule 9(b) and may not be subject of any heightened pleading requirement").   The issue has not been addressed by the Third Circuit, nor does it appear that any other federal appellate court has addressed the question of the applicability of Rule 9(b) to a Lanham Act false advertising claim.  *See, e.g., Nutrition & Fitness, Inc.*, 202 F. Supp. 2d 431, 434 (M.D.N.C. 2002) (noting that some district courts have applied a heightened pleading standard but no appellate court has opined on the issue).

Under Rule 9(b), where a complaint alleges "fraud or mistake," a plaintiff must describe "with particularity" the circumstances that constitute the fraud or mistake.  Fed. R. Civ. P. 9(b).

Generally speaking, "Rule 9(b) serves to give defendants notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (alterations in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).  The rule requires a plaintiff to plead with particularity the facts supporting the elements of fraud.  *Id.*  Thus, in order to successfully plead fraud under Rule 9(b), a plaintiff must offer "some precision and some measure of substantiation." *Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 257 (D.N.J. 1990).  Plaintiffs may satisfy the rule's requirement "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (quotations omitted).  A Plaintiff also must allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

A few district court decisions within the Third Circuit have recognized an "intermediate" approach with respect to for pleading Lanham Act false advertising claims.  *See EVCO Technology & Development Co., LLC v. Buck Knives, Inc.*, No. 05-6198, 2006 WL 2773421 (E.D.Pa. 2006) (citing cases).  This intermediate approach, first applied in *Max Daetwyler Corp. v. Input Graphics, Inc.* 608 F.Supp. 1549 (E.D. Pa. 1985), has been described as striking a balance "between application and outright rejection of Rule 9(b)." *Id.* at *4.  The *Max Daetwyler* court found that

> [a]lthough Federal Rule of Civil Procedure 8 requires a party to plead only a "short and plain statement of the claim," Rule 9 requires that fraud and mistake be pleaded with greater specificity.  The Lanham Act claim in the present case is not

a pure "fraud" claim and, thus, need not satisfy all of the pleading requirements which have been imposed under Rule 9. But the policies which underlie Rule 9's requirement that the nature of an alleged misrepresentation be pleaded with specificity are equally applicable to the type of misrepresentation claims presented in plaintiffs' Lanham Act claim. In litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense.

608 F. Supp. at 1556.

Thus, the standard articulated in *Max Daetwyler* requires more particularity than traditional notice pleading under Rule 8 but something less than the specificity of Rule 9. The Court finds that, at a minimum, this intermediate standard is the appropriate standard to apply in this case, and further finds that the SAC falls short of meeting this requirement. Count Two first alleges that Defendants made "false and misleading statements in commerce concerning the nature, composition, characteristics, quality, effectiveness and uses of the coral calcium product associated with the Barefoot name in issue and/or are making false and misleading statements in revised edition of the subject literary Work *Barefoot on Coral Calcium*, as described above,[10] and in other books, and other formats, such as video." SAC, Count Two, ¶ 2. This portion of Count Two must be broken down and considered as two separate allegations of wrongdoing, as it is separated into two parts by an "and/or." The first part -- which alleges that Defendants made "false and misleading statements in commerce concerning the nature, composition, characteristics, quality, effectiveness and uses of the coral calcium product associated with the Barefoot name in issue" -- fails because it does little more than parrot the relevant statute, *see* 15

_____

[10]Despite the SAC's statement that the purported misrepresentations are "described above," a thorough and careful reading of the SAC provides no further detail with respect to Plaintiffs' allegations.

U.S.C. § 1125(a), and neither identifies nor provides any detail at all regarding the alleged

misstatements.  The second part -- which alleges that Defendants "are making false and

misleading statements in revised edition of the subject literary Work *Barefoot on Coral Calcium*

. . . and in other books, and other formats, such as video" -- provides even less detail about any

false statements, and does not appear to even fulfil the minimal pleading requirements of Rule 8,

as it does not allege that the purported false statements being made relate to "[Defendants'] or

another person's goods, services or commercial activities" as required to plead a claim for false

advertising.  15 U.S.C. § 1125(b).

Additionally, the SAC alleges in Count Two that Defendants have made "false and

misleading statements in commerce regarding their alleged right to sell coral calcium associated

with the Barefoot name, and the literary Work *Barefoot on Coral Calcium*."  SAC, Count Two, ¶

3.  Again, Plaintiffs do not provide any specificity with respect to the circumstances of the

alleged false statements to meet the intermediate standard of *Max Daetwyler*.

In response to Defendants' argument that Plaintiffs did not plead their claim with the

requisite specificity, Plaintiffs point to the allegations contained in Count Five that state that

Defendants have made claims in their infomercials "about coral calcium" that were allegedly

inaccurate, including, for example, that "coral calcium nutritive supplements will cure cancer."

SAC, Count Five, at ¶ 2.  However, these allegations do not save Count Two.  The false

statements alleged in Count Two purportedly referred to a specific brand of coral calcium

supplements, *i.e.*, those bearing the Barefoot name.  It is clear that the alleged false statements in

Count Five referred to coral calcium supplements *generally* and not to the product specified in

Count Two.  Consequently, Count Two is dismissed because it fails to plead the claim with the

requisite particularity.

E.  Fraud Claims

In Counts Three and Five, it appears that Plaintiffs are attempting to assert fraud claims. Count Three alleges that "Defendants have deceived the public with unauthorized claims, and/or the promotion and advancement of unauthorized claims, regarding coral calcium products and literary Works associated with the Barefoot name."  SAC, Count Three, ¶ 2.  That count further states that "third parties rely upon the inaccurate statements made, advanced and/or promoted by defendants in the purchase of the subject coral calcium products and the literary Work Barefoot on Coral Calcium."  *Id.* at ¶ 3.

In Count Five, Plaintiffs assert Defendants made false claims about the use of coral calcium products as a cure for serious diseases.  *Id.,* Count Five, ¶¶ 2-3.  Plaintiffs further allege that "[s]uch claims were designed by said defendants to mislead the public, especially people who are very ill and desperately in search of a cure; and were further designed to inure to the financial betterment of said defendants."  *Id.* at ¶ 4.  According to Plaintiffs, such acts constituted "fraud and fraudulent commercial speech."  *Id.* at ¶ 5.  Defendants argue that these claims are defective because, first, Plaintiffs have failed to plead them with the requisite particularity; and second, because the SAC fails to allege that Plaintiffs suffered damages as a result of the alleged fraud, as opposed to the allegations of harm to the "public."

In opposition to this motion, Plaintiffs argue that they have adequately pled their fraud claims and have done so with the requisite particularity.  In support of their position, however, they point only to allegations in the SAC that detail the actions of Barefoot rather than any particular actions by Defendants.  Plaintiffs argument in this regard is puzzling to say the least,

and is so far off of the mark that little discussion of the issue is warranted.  Plaintiffs

acknowledge that to establish a *prima facie* claim of fraud they must allege that: (1) the

defendant made a material representation (2) of a presently existing or past fact (3) which was

false (4) and was known to be false by the defendant at the time it was made (5) and was made by

the defendant for the purpose of inducing the plaintiff to rely on the misrepresentation (6) and the

plaintiff actually and reasonably relied upon the misrepresentation (7) and the plaintiff suffered

injury as a result.  *Shapiro v. Barnea*, 2006 WL 3780647, *3 (D.N.J. Dec. 21, 2006); *Jewish Ctr.

of Sussex County v. Whale*, 86 N.J. 619, 624-25 (1981)).  The allegations of fraud in Counts

Three and Five against Defendants come nowhere close to fulfilling these elements.  Nor are the

claims pled with the requisite specificity applicable to fraud claims. Fed. R. Civ. P. 9.

Therefore, to the extent that these counts purport to set forth a claim for fraud, these counts fail.

To the extent Count Five also asserts that the acts alleged are "in violation of the

mandates of the Dietary Supplement Health and Education Act of 1994; the statutory scheme of

the Food and Drug Act; and Truth in Labeling required by the Federal Trade Commission," it

fails in that regard as well.  SAC, Count Five, ¶ 7.  Such claims have no merit, as the referenced

provisions do not create a private right of action for Plaintiffs.  *See, e.g.*, *NVE, Inc. v. Dept. of

Health and Human Servs.*, 436 F.3d 182,189 (3d Cir. 2006) ("DSHEA does not provide a private

cause of action"); *Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817, 832-3 (W.D. Tex. 2001)

("the [Food, Drug and Cosmetics Act] does not create a private right of action to enforce the

FDCA or restrain the provisions of the or FDA regulations."); *Mutual Pharmaceuticals Co. v.

Ivax Pharmaceuticals, Inc.*,  --- F. Supp. 2d --- , No. CV-06-4474-SGL(JCX), 2006 WL

3026246, at *9 (C.D. Cal. Oct. 17, 2006) ("Neither [the FDA or the FTC] constituent statutes

creates an express or implied private right of action")).  Consequently, Counts Three and Five are dismissed in their entirety.

### F.  Tortious Interference Claims

Counts Four, Six, Ten and Eleven allege that Defendants have tortiously interfered or conspired to tortiously interfere with the contract between Plaintiffs on the one hand, and Barefoot and Deonna Enterprises on the other.  This contract granted plaintiffs Wellness and Holt Consulting exclusive rights in the Work as well as the right to use Barefoot's name and likeness to advertise and promote the Work and "associated items."  SAC at ¶ 27.  In this contract, Barefoot and Deonna agreed that they would not compete in selling the book and would not compete "on the subject of coral calcium."  *Id.*

In Count Four, Plaintiffs allege with little specificity as to the facts underlying their claim that DMC, Trudeau and Shop America, as well as others not relevant to this motion, "tortiously interfered with [Plaintiff's] contractual relationship."  SAC, Count Four, ¶ 2.  In Count Six, Plaintiffs allege that "it was an act of tortious interference with contractual relations by [Shop America, Trudeau and DMC] to utilize Barefoot's likeness on infomercials touting coral calcium, in order to sell 'associated items,' such as coral calcium nutritive supplements, that compete with plaintiffs' products."  SAC, Count Five, ¶ 4.  Count Ten alleges that ITV "has been involved in the production and airing of one or more of the aforesaid infomercials and or has been involved in the sale of calcium nutritive supplements and books," and "[i]n the course of these activities ... have tortiously interfered with the contractual relations of plaintiffs as they have utilized Barefoot's likeness on infomercial touting coral calcium, on order to sell "associated items," such as coral calcium nutritive supplements that compete with plaintiffs' products."  SAC, Count Ten,

¶¶ 2-3.  Finally, Count Eleven alleges that Defendants conspired to tortiously interfere with the contract between Plaintiffs and Barefoot.  SAC, Count Eleven, ¶ 3.

Defendants first argue that Plaintiffs tortious interference claims must be dismissed because they are preempted by the Copyright Act.  Alternatively, they argue that the SAC fails to plead the requisite elements of a tortious interference claim.

Section 301 of the Copyright Act specifically preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a).  Courts have applied a two-part test in order to determine whether a claim is preempted by Section 301.  A state law cause of action such as the tortious interference claim by Plaintiffs here is preempted by federal copyright law if (1) the subject matter of the claim falls within the subject matter of copyright law, and (2) the asserted state law right is "equivalent" to any of the exclusive rights specified by 17 U.S.C. § 106.  *Long v. Quality Computers & Applications, Inc.*, 860 F. Supp. 191, 196 (M.D. Pa.1994).

In the present case, Plaintiffs explain that their tortious interference claims are directed only to that part of the contract where "Barefoot and Deonna Enterprises Inc. agreed not to compete in selling Plaintiffs' book and not to compete on the subject of coral calcium."  Pl. Brf. at 26.  In the 2001 agreement between Wellness Publishing and Barefoot/Deonna, Barefoot/Deonna agreed not to "compete on the subject of Coral Calcium" and not to "encumber [Plaintiffs] by acts of a competing nature."  Declaration of Christopher Robertson at Ex. A.  Focusing only on these provisions of the agreement with respect to Plaintiffs claims, application of the two-part test above show that the claims are not preempted by Section 301.  Plaintiffs having clarified the scope of their tortious interference claims, Defendants argument that the

claims are preempted by the Copyright Act fails.

The question becomes, therefore, whether Plaintiffs have properly stated a tortious interference claim.  In order to establish a claim for tortious interference with contractual relations, a plaintiff must prove the following: "(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003).  Defendants argue that Plaintiffs have pled neither the requisite intent/malice nor damages.

A party that maliciously induces another to breach his contract can be liable under this tort.  *Norwood Easthill Assoc. v. Norwood Easthill Watch*, 222 N.J. Super. 378, 383 (App. Div. 1988).  A party acts with malice when he intentionally commits a wrong without excuse or justification.  *Monmouth Real Estate Inv. Trust v. Manville Foodland, Inc.*, 196 N.J. Super. 262, 270 (App. Div. 1984).  Defendants claim that the malice element is missing here because Plaintiffs have not alleged that Defendants knew about the terms of the 2001 agreement prior to the alleged wrongful actions.  Indeed, it is true that "a person cannot intentionally interfere with a contract that he knows nothing about." *Trump Taj Mahal Associates v. Costruzioni Aeronautiche Giovanni Agusta*, 761 F.Supp. 1143, 1164 (D.N.J. 1991).  Here, however, the SAC alleges that Trudeau, DMC and Shop America "were made aware of the contract between [Plaintiffs and Barefoot/Deonnna].  SAC ¶ 29(A).[11]  The SAC also alleges in Count Eleven that Defendants'

---

[11]With regard to the issue of Defendants' knowledge of the contract, Plaintiffs submitted an affidavit from Steven Bailey, who states he was the business manager for Barefoot in 2003-2004.  The Court did not consider this affidavit as it is outside of the pleading and, therefore, not properly considered on a motion to dismiss under Rule 12(b)(6).

actions "were taken with knowledge of Plaintiff's contract with Defendant Barefoot."  SAC, Count Eleven, ¶ 4.  The Court finds that Plaintiffs have adequately pled that Defendants had knowledge of the relevant contract.

Nevertheless, the Court finds that Plaintiffs tortious interference claims fail with respect to the malice element.  In cases involving intentional interference with contract, the element of malice is understood to mean "the intentional doing of a wrongful act without justification or excuse."  *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.*, 49 F. Supp. 2d 728, 737 (D.N.J. 1999).  An act is considered "wrongful" if it is illegal or if it is "transgressive of generally accepted standards of morality."  *Id.*  Here, Plaintiffs have not pled any "wrongful act" on the part of the moving Defendants.  The SAC alleges that Defendants made informercials with Barefoot that involved coral calcium products.  It may be inferred from the SAC that by doing so Barefoot breached his contractual obligations to Plaintiffs.  However, to state a claim for tortious interference, Plaintiffs must allege more.  Plaintiffs do not allege that Defendants, for example, induced Barefoot to breach his contract or committed any other act that could be considered illegal or "transgressive of generally accepted standards of morality." Moreover, they fail to plead any causal connection between the actions of Defendants and any damages they may have suffered.  Their tortious interference claims, therefore, shall be dismissed.

### G.  Common Law Unfair Competition

Counts Five, Nine and Twelve purport to state claims for common law unfair competition.  In Count Five, Plaintiffs claim that in their infomercials, Defendants Shop America, Trudeau, and DMC made allegedly false claims that coral calcium supplements can

cure serious diseases.  Count Nine asserts that ITV "has been involved with the production and airing of one or more of the aforesaid infomercials and/or has been involved in the sale of calcium nutritive supplements and books."  SAC, Count Nine, ¶ 2.  Plaintiffs claim that "[i]n the course of these activities, [ITV] has made claims that were designed to mislead and deceive the public" and that ITV profited from this deception.  Id. at ¶ 3.  Count Twelve purports to "set[] forth a cause of action against Defendants Trudeau, Shop America and ITV Direct for conspiracy to unfairly compete through false advertising."  This count alleges that "Defendants conspired to falsely advertise the benefits of coral calcium in two infomercials which had the effect of ultimately damaging the market for Plaintiffs' coral calcium product."  SAC, Count Twelve, ¶ 3.

New Jersey's common law of unfair competition "is an amorphous area of jurisprudence. It knows of no clear boundaries....  The concept is as flexible and elastic as the evolving standards of commercial morality demand."  *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp.2d 802, 815 (D.N.J. 2000) (quoting *N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411, 427 (Ch. Div. 1976)).  The "prevention of unfair competition is not circumscribed by rigid rules . . . [and] equity has grown more vigilant in the search for efforts on the part of one competitor to capitalize on the good will of another, to pass off his goods as those of another, or to pirate the trade of his competitor by unfair or deceptive practices."  *Sachs Furniture & Radio Co. v. Sachs Quality Stores Corp.*, 39 N.J. Super. 70, 85 (App. Div. 1956). At the center of New Jersey's unfair competition law is "fair play."  *Ryan v. Carmona Bolen Home for Funerals*, 341 N.J. Super. 87, 94 (App. Div. 2001) (citing *Columbia Broadcasting Sys. v. Melody Recordings*, 134 N.J. Super. 368, 376 (App. Div. 1975)).  "Thus, the purpose of the law regarding unfair competition is to promote higher ethical standards in the business world."

37

*Id.*

Nevertheless, the common law of unfair competition is not completely boundless. "The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157, 109 S. Ct. 971, 981 (1989). Indeed, it has been stated that "[t]he essence of unfair competition is the practice of palming off one's product as that of another." *Squeezit Corp. v. Plastic Dispensers*, 31 N.J. Super. 217, 222 (App. Div. 1954); *see also Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F.Supp. 693, 708 (D.N.J. 1977) ("The essence of unfair competition is the sale of one's own goods for those of another person."). As such, most cases of unfair competition encompass one of two torts: passing off one's goods or services as those of another and unprivileged imitation, *SK&F, Co. v. Permo Pharm. Lab., Inc.*, 625 F.2d 1055, 1062 (3d Cir. 1980), although an action for common law unfair competition need not necessarily be based on those two torts alone, *Duffy,* 97 F. Supp.2d at 601 n.8.

A prerequisite to an act of unfair competition is that one party misappropriates another's property:

> Although it is impossible to categorize all acts which constitute unfair competition, there are a few fundamental elements that are definite. In essence, unfair competition is a business tort. Generally it consists of the misappropriation of one's property by another – property which has some sort of commercial or pecuniary value. The misappropriation usually takes the form of 'palming off' or 'passing off' another's goods as your own, although this Modus operandi is not essential.

*Hillman-Kohan*, 144 N.J. Super. at 427-28 (citations omitted). Additionally, "[a] prima facie case of unfair competition, like tortious interference and employee piracy, requires evidence of bad faith or malicious conduct. *Samsung America Inc. v. Park*, 2006 WL 3627072 at * 17 (N.J.

Sup. Ct. App. Div. December 11, 2006).

In the present case, Plaintiffs allegations in the relevant counts center on allegedly misleading statements that Defendants made while marketing their coral calcium products that regard the ability of coral calcium to cure disease.  As alleged by Plaintiffs, these statements were made in the course of selling products that Plaintiffs have described as "competitive literary work and competitive associated items for sale," which presumably included coral calcium supplements and other coral calcium products that competed with Plaintiffs' products.  SAC, ¶ 29A.  The question for the Court, therefore, is whether a common law claim for unfair competition extends to a situation where a competitor, in the course of marketing its product, makes allegedly misleading statements about that product, but such actions are not alleged to constitute "palming off" or some other manner of misappropriation.  Defendants argue that it does not.

While it does not appear that New Jersey courts have examined the issue of whether such false advertising is actionable as common law unfair competition, there is authority in other jurisdictions that common law unfair competition law is inapplicable in such situations.  *See, e.g., Klein-Becker USA, LLC v. Home Shopping Network, Inc.*, 2005 WL 2265007, *7 (D. Utah 2005) (refusing to recognize other common-law unfair competition claims beyond "palming off" and "misappropriation"); *Sachs v. Industrial Indem. Ins. Co.*, 1993 WL 93562, *2 (C.D. Cal.1993) (false advertising claims are not subsumed within the common law tort of unfair competition); *Smith-Victor Corp. v Sylvania Electric Products, Inc.*,  242 F Supp 302, 309 (N.D. Ill. 1965) (in a common-law action for false advertising, a plaintiff does not have standing to sue unless it shows that the defendant has palmed off its goods as those of the plaintiff or that the

plaintiff has a complete monopoly of the goods involved).  Additionally, Defendants point to *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 495 (D.N.J. 1998), in which the court dismissed a common law unfair competition claim where a plaintiff failed to "assert a claim of passing off or unprivileged imitation."  Similarly, this Court finds that Plaintiffs' allegations do not establish a claim of unfair competition under the common law.  While there may be federal and state statutory provisions that provide broader competitive protections than the common law with respect to false advertising, Plaintiffs have chosen to expressly plead their unfair competition claims in Counts Five, Nine and Twelve under the common law only.  Consequently, Counts Five, Nine and Twelve are dismissed.

H.  Conversion

    In Count Seven, Plaintiffs baldly allege that "Defendants have engaged in the conversion of plaintiffs' property."  SAC, Count Seven.  "Conversion consists of the wrongful exercise of dominion and control over property owned by another inconsistent with the owners' rights. *800 Port-O-San Corp. v. Teamsters Local Union No. 863 Welfare & Pension Funds*, 833 A.2d 633, 639 (N.J. Super. App. Div.2003) (quoting *Commercial Ins. Co. of Newark v. Apgar*, 267 A.2d 559, 562 (N.J.Super. Law Div.1970)).  Importantly, the tort of conversion "relate[s] to interference with tangible rather than intangible property."  *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc*., 210 F.Supp.2d 552, 568 (D.N.J.2002).  In the present case, the SAC contains not a single allegation that Defendants wrongfully exercised control or otherwise interfered with any tangible property belonging to Plaintiffs.  Count Seven, therefore, is dismissed.

**III.  Conclusion**

    For the reasons above, Plaintiffs' motion to compel mediation is denied, and Defendants'

motion to dismiss the SAC is granted.  An appropriate Order accompanies this opinion.


/s/ JOEL A. PISANO_____
United States District Judge

Dated: January 8, 2008

41